The opinion of the Court was delivered by
CoiiCOCK, J.
In determining this case, I shall not pursue the order either of plaintiff’s or defendant’s counsel, but consider :
*236 1. Whether the Legislature of our State can constitutionally deprive an individual of his property for great national purposes ? If so,
2. Have the Legislature, by the Act of 1811, vested this ferry in the plaintiff ? If so,
3. Does the common law protect the plaintiff in the use of this right so granted ? If so,
4. What ought to be the measure of damages ?
Upon the first question, little need be said, as it *has been solemnly decided in the case of the Commissioners of the Roads v. Withers,[1] that the Legislature here have the power of laying out a public road through the land of any individual. But a reference to the fundamental principles of government is almost indispensably necessary in the cáse, as they are the basis on which the common law doctrine, by which it is to be decided, is established. “ It is evident from the very act of civil or political association, that each citizen subjects himself to the authority of the entire body, in every thing that relates to the common welfare. The authority of all over each member, therefore essentially belongs to the body politic, or to the State but the exercise of that authority constitutes the different forms of government, and is indispensable to all. “If the body of the nation keeps in its own hands the empire, or the right of command, it is a popular government.” Vatt. 1-2. Such is ours. “ Every thing in the political society ought to turn to the good of the community; and if even the citizen’s person is subject to this rule, their fortunes cannot be excepted. The State cannot subsist or constantly administer public affairs in the most advantageous manner, if it has not the power of disposing, on occasion, of all kinds of goods, subject to its authority.” And this is called the “eminent domain.” Vatt. 103. It is the duty then of the sovereign authority to administer in all public affairs; and the establishment of roads, bridges and ferries, has ever been considered as a public affair. It is that in which the whole community is interested. “ One of the principal things that ought to employ the attention of a government with respect to the welfare of the public in genera], and of trade in particular, relates to highways, canals, &e., in which nothing ought to be neglected to render them safe and commodious.” “ The construction and preservation of all these works being attended with great expense, the nation may very justly oblige all those to contribute to them who receive advantage from their *use. This is the lawful source of the right of toll.” Vattel, 40. These fundamental principles are recognized by the writers on the laws of nations. Puffendorf, 64, chap. 7. Domat’s Pub. Law, book I, tit, 8, see. 1.
I shall consider the second question, 1st, in relation to the words of the clause. 2d. In reference to other acts; and 3d, as to the alleged fraud in obtaining the grant.
1st As to the words used in the clause granting the ferry to the plaintiff. No set form of words is necessary in such a grant; any which show clearly and explicitly the intention of the Legislature, are sufficient. Some of the usual words are omitted ; but the ferry is re established in the name of the plaintiff his heirs and assigns. The Legislature cer *237 tainly meant something, and could have meant nothing else than to give the ferry to the plaintiff for the term of fourteen years. Where then is the doubt as to the meaning of the Legislature ? The rule is, that such a construction shall be given ut res magis valeat quam pereat It was contended, however, that the ferry was established with reference to the Act of 1791, which required certain conditions precedent tobe performed by Mr. Compty, to whom it was then granted ; but this has no foundation in fact, for there is no reference in the clause to any other Act, nor can any be implied. In order to designate the ferry intended to be granted, it says, “ the ferry formerly called Gompty’s;” but is it necessary to refer to the Acts to show what ferry this was ? Is it not a fact which must be proven independent of any Act ? But if it were possible to conceive that any such reference was intended, it is said the condition, imposed on Compty was a condition precedent; it would then be presumed that he had complied with it, as it was clear that he had both built a bridge at the spot, and afterwards run a boat. As to the third point, that the grant was defective on the ground of fraud, it is equally without foundation in fact; for Col. Chappell proved that no more was *said to him when he made the application for this grant, by the plaintiff, than that the term for which the former grant had been made had nearly expired, which was strictly true.
Upon the third, and as it is conceived, the important question, it has been shown, that upon those general principles which apply to all governments, the right to establish ferries is an incident of sovereignty; it follows, then, that no individual has a right to establish a ferry without the permission of the government. When a ferry is established by the government, certain duties are imposed oti the person to whom the grant is made. He is obliged to make a sufficient boat; to employ a white man ; to keep up the banks of the river ; to transport the citizens at all times of day and night. He is subjected to fines for the neglect of duty ; and is answerable in damages for any injury or loss which results from his negligence ; all of which is necessary for the public convenience; and as a remuneration for his services, and these liabilities, is allowed a fixed rate of ferriage. But of what avail would these regulations be, if there was no law to enforce them ? Is it not obvious, that if an individual were permitted to erect a ferry, and draw off the profits of one established by law, that these regulations of the government would be rendered useless, or worse than useless. The certainty and safety of transportation would be destroyed, for the individual might at pleasure stop his ferry. But the common law, which necessarily grows out of this state of things, will be found clear and explict. Before, however, I state what that law is, it will be necessary to remark, that the distinction which was attempted to be made between ancient ferries, and those by express grant, is without foundation; for when a ferry is prescribed, for, it is upon the ground that there was originally a grant, which is presumed to have been made after a continued use of many years. Phil. Ev. 219. “ Whensoever the the law giveth any right,” says Coke, “ it also giveth a remedy ; and ^whenever a person has suffered an injury, not common to all others he shall have an action.” Coke Lit. 56. The grant of a thing shall include every thing necessary to its enjoyment. Pow. on Oont. 256.
“ If a ferry,” says Blackstoue, 3 Com. 219, “is erected on a river so *238 near an ancient ferry as to draw away its custom, it is a nuisance to the owner of the old one. For where there is a ferry by prescription, the owner is bound to keep it always in repair and readiness for the ease of all the king’s subjects ; otherwise he may be grievously amerced; it would be therefore extremely hard, if a new ferry were suffered to share its profits which does not also share his burden.” This doctrine is also clearly stated by Chief Justice Wilies, in his Reports, 512, (Blissett v. Hart, note.) A ferry is publici juris. It is a franchise that no one can erect without a license from the crown ; and where one is erected, another cannot be erected without an ad quod damnum. If a second is erected without a license, the crown has a remedy by a quo warranto, and the former grantee has a remedy by action.” And the same doctrine is to be found in 2 Roll. Abr. 140. 3 Jacob’s Law Dictionary, 48. Tripp v. Frank, 4 T. Rep. 666. 1 Hay. Rep. 457. Bull. N. P. 76. 2 Esp. Dig. 642, Gould’s Ed. 1 Comyn’s Dig. 304, action upon the case for a nuisance, (A.) 1 Chit. Plead. 142 ; and lastly, in a case which was most ably argued, Livingston v. Van Ingen, 9 John. 507. From all which it is manifest, that the common law does protect the plaintiff in the right granted him by the Legislature, and that his action is well supported ; and further, that the defendant had no right to establish a ferry without public authority. But if the public authority to lay out roads over the lands of individuals should be questioned, the plaintiff’s right is supported on another ground still stronger. The land on the west side of the river was purchased by defendant, as it was admitted, about the year 1808 ; and on the east side in the year 1816. The road was laid in 1191, at a time when he had no claim to it; from 1191 to 1811, is iwenty years, during which time *the public has been in the quiet enjoyment of the road, from which a grant, or surrender of the right, may be presumed. Phillips on Evidence, 119. Again, say that in the year 1191, the banks of the river were private property; from 1191 to 1196, Compt-y and his heirs were in the peaceable possession of them, which gives a title by the Statute of Limitations.
I come now to consider the last question as to damages. It is said the Court erred in stating to the jury, that the clear gains of the defendant was the proper measure of damages. If it had appeared that the custom had been drawn off from plaintiff’s ferry by a fair competition on the part of the defendant, it might have been incorrect to make his clear gains the measure of damages. But when it is recollected that he resorted to other means to divert the custom from plaintiff’s ferry; that he obstructed the landing place by throwing in trees; that he stopped the road by a fence; that he put up public notice, warning the citizens that they would find difficulties in the way to the plaintiff’s ferry, it is conceived that it was fair to make his clear gains the measure of damages. It was contended that the damages should have been regulated by the gains of the plaintiff before the defendant’s ferry was erected. But the proof on this subject related to tlie years 1812, ’13, and ’14, when the country was at war; all trade and business at a stand ; and consequently but little intercourse between the town and country. This, surely, then would not have been fair. The defendant’s ferry went into operation soon after peace was restored. Commerce revived, and the intercourse between the town and country was greater than it had ever been ; from which latter cause, *239 it is fair to presume, proceeded the greater gains of the defendant. But it is difficult to comprehend the meaning of that part of the last ground, which says, that the rule laid down by the Court induced the jury to give excessive damages. For had the rule laid down by the Court, been pursued by the jury, the damages would have been less. Upon the whole, the Court *cannot consider the damages such as to warrant any intei’position in behalf of the defendant.
W. F. Be Saussure and Gregg, for the mortion. Blanding and Nott & M’Gord, contra.
Let the motion be dismissed.*
Nott and Johnson, concurred.

 Reported 3 Brev. p. 83, perhaps; hut the reported cases do not contain, the principle laid down in the text. See Ante, 7 note, 2 vol. 518, note.

 Stark v. M’Gowen.
Soon after the above decision, the defendant filed his bill (14th January, 1819) in the Court of Equity, at Columbia, praying “That the said clause, in the Road Act of the 21st December, 1811,[1] (so far as the same may confer any private benefit to him, the said Henry M’Gowen) may be vacated and cancelled: and that the said Henry M’Gowen may be restrained by the injunction of this honorable Court, by reason of his manifold acts of fraud in procuring the same, and preventing *the same from being repealed by the General Assembly, from doing or exercising any act, at and upon your orator’s landings and roads,” &c. That he may be likewise restrained from commencing any action against your orator, for setting up his ferry again and taking toll, or for setting over persons without charge, and that he be enjoined and restrained perpetually from enforcing his said judgment,” &c., and also to account for the ferriage received, &e.
■ On the suggestion of the presiding Judge, Chancellor Waties, the counsel for the defendant agre’ed to admit the facts as stated in the bill, and to argue- the case as if on a general demurrer.
His Honor requested to hear complainant’s solicitor first, as he thought the demurrer sustainable.
Mr. William E. De Saussube, for the complainant, contended, that complainant had made a strong case for relief: that it was admitted that defendant had, by false suggestions, prevented the legislature from doing what otherwise they would *240 have done according to their established practice, to wit, to vest half the ferry in complainant, or make him compensation. That complainant was owner of the west bank of the river, but the legislature had been deceived and imposed upon by defendant as to that fact. That if the Court did not interfere, complainant was without remedy.
The legislature could not, if applied to, repeal a charter it had granted. It is a party to the contract. Fletcher v. Peck, 6 Cranch, 132. I cannot set aside its own act. This would be to assume judicial powers.
But if it could interfere to repeal its charter, yet the relief would not be adequate; it cannot enjoin the judgment at law.
The court of law cannot interfere, it is not competent; Jackson v. Lawton, 10 John. Rep. 23, 26. See also, Mounce v. Ingram, et al., Constitutional Court, 1802; [1] Equity Reports, 66 note; 1 Brev. Dig. 199, in note.
If there were no precedent, yet this Court must interfere and relieve the citizen where it is manifest that no other tribunal has the power.
It is a maxim of the common law, that every wrong has its remedy. Chief Justice Pkatt said, he never wished again to hear the objection of novelty urged; for torts are infinitely various, and there is nothing in nature that may not be made an instrument of mischief; 1 Chitty’s Pleadings, 8A-6. See also Willes’ Rep. 581. In the Code Civil of Prance the judges are ordered to go on, and where a new case arises, to create a precedent and give relief in cases where the law is silent. 1 Tom. Code Civil, 16. Under the head of “ Regies pour lesjuges,” The orator Portalis says, ‘1II est done necessairement une foule de cirConstances dans lesquelles un juge se trouve sans loi. II faut done laisser alors au juge la faculte de suppleer a la loi par les lumieres naturelles de la droiture et du ion sens. Rien ne serait plus pueril que 'kde vouloir prendre des precautions suffisantes, pour qu’un juge n’eut jamais qu’un texte precis a appliquer.” See also the same vol. p. 49, sec. 4., But “the Court of Equity has an undoubted jurisdiction to relieve against every species of fraud,” Chesterfield v. Jansen, 2 Ves. sen. 155, per Lord Chancellor Hakdwioke. And have exercised that jurisdiction in cases like the present: Attorney-General v. Vernon, 1 Vern. 388, 5 Com. 282, F. 6, 2 Harris and M’Henry, 201, 244.
But it is said these were charters by the King, and not legislative acts. But see 2 Blackstone’s Com. 346, citing Richardson v. Hamilton, Canc. 8 Jan. 1733, and M’Kenzie v. Stuart, Dom. Proc. 13th March, 1754. This was a private act. It is not certain that the establishment of a ferry can be regarded as a public act; but the vesting of it in a particular individual is certainly private. There may be a private clause in a public aot; Coke’s Reqjorts, 5 vol. 10 part, 57 b. case of the Chancellor of Oxford, and cases there cited.
But without interfering with the Act of Assembly, the Court has power to enjoin the defendant from availing himself of it, and of the j udgment at law perpetually.
May declare him trustee.
We are not precluded by the verdict at law, for that Court could not try the fraud; 10 Johns. 23, 1 Harris and M’H. 189. The issue below was, whether the legislature had given M’Gowen a right to a ferry, and Stark had violated it. That is no question here, and parol evidence could not be received to show that other matters came in issue than as appears by the record; 1 Esp. Rep. 43, 2 Johns. 30. The comity exercised by the Courts as to matters decided by each other, does not extend to collateral matters not necessarily decided by the verdict. The scire facias to repeal a patent may be brought on the part of the King or a subject; 3 Black. Com. 261.
The Act is unconstitutional. “ It is the universal sentiment of the American people, evidenced by the Constitution of the United States, that the legislative power ought not to take an individual’s property without his consent.” Ck. J. Kent, 2 Johnson’s N. Y. R. 166. No State shall pass a law to impair the obligar tion of contracts. But a grant is a contract executed. Is the clause to be considered as inhibiting the State from impairing the obligation of contracts between two individuals, but excluding from that inhibition contracts made with *241 itself ? The words themselves contain no suoh distinction; per. Ch. J. Marshall, 6 Cranch. 137.
This is not the ordinary case of taking land for public use without compensation. Public good might require that the landing should be taken from complainant for the benefit of the public, but it does not require that the defendant should be the ferryman.
It is said that the constitutional question has already been decided in the court of law; but a proper case being made, this Court must consider the question. The comity of the Courts as to the decisions of each *other cannot extend to a constitutional question, because every judge is bound by his oath of office to “preserve, protect and defend the Constitution.” The Court of Equity will not submit its judgment and its conscience to the keeping of the Court of Law.
The legislature made this grant mistake, supposing the printed Act of 1799 was really passed. The term “ re-established ” proves this. In point of fact, the ferry was not before established. And this mistake being palpable, gives this Court jurisdiction.
Chancellor Waties :
This bill is brought by the complainant, to be relieved from a verdict at la,w obtained against him by the defendant. The grounds of complaint are very numerous, and are certainly of a nature which should entitle them to the fullest consideration; but all of thorn of which this Court might originally have taken cognizance, have been already considered and decided both by the-Constitutional Court and the legislature; and it is evident to me that I should be' exercising an appellate jurisdiction over their proceedings, if I should now re-examine the case. It is contended indeed, that there is one matter which has not before been considered, and which is exclusively of equitable cognizance; it is alleged that the clause of the Act which vested the ferry in the defendant, was obtained by false suggestions on his part, and may on that account be set aside by this Court. This position cannot be supported; and the authorities quoted do not apply to it. Mr.' Justice Blackstose has indeed said (2 Blac. Com. 345), that private Acts of Parliament may be relieved against, when obtained upon fraudulent suggestions ; but these Acts are passed for the sole purpose of unfettering estates from the unreasonable contrivances of former tenants, and are regarded so much in the light of private conveyances, that they are left open to future exceptions, by a general saving of the rights of all persons interested in them. But Mr. Black-stoke has nowhere said that a public Act may be avoided in the same manner. On the contrary, he has insisted (1 B. 91, 161) that this is transcendant in its nature; that it must be obeyed (if positive), however unreasonable, and can only be controlled by an impossibility. This doctrine is not indeed admissible here to the same extent, for under our improved system of government the legislative power is limited by constitutional restrictions ; but in all other respects it is the sovereign power of the State. And it cannot be doubted that the Act which contains a clause under consideration is a public one. It is an Act “to establish certain roads, bridges and ferries,” which are all manifestly public objects of legislation; and the clause that vests the ferry in the defendant, is a grant of a public right, which must necessarily belong to the sovereign power under any form of government.
In the case of Fletcher v. Peck, 6 Cranch, 131, which was also much *relied on, the opinion of the Court does not in any respect differ from that entertained in the present case. The point decided there was, that a law of Georgia could not annul a right acquired under a previous grant of the State, because it was forbidden by the Constitution of the United States to pass any law impairing the obligation of contracts. And I admit that if the Act here complained of had deprived the complainant of a right which was before legally vested in him, it would be the dirty of this Court (if the case was originally before it) to declare the Act void, because unconstitutional. But this objection to it has been already considered by a Court, to which the subject most properly belonged, and its decision must be conclusive.
It may also be admitted, that if a suit was instituted on the part of the State to annul the right grant.ed to the defendant on account of fraud in obtaining it, the *242 Court might sustain such a suit; but I disclaim any authority to set aside the Act at the suit of an individual, because the legislature in the exercise of a legitimate power may have unjustly preferred the claims of another. The validity of a law does not depend on the reasonableness of it, or on the motives of its makers, but on its consistency with the Constitution. If, therefore, in acting on a subject within in its limits, the legislature should, either through misinformation or any other cause, do injustice to an individual, there is no Court that can give relief. But I am bound to presume, that no injustice has been done to the complainant. He has made an appeal to the legislature as well as to the Constitutional Court, and they have both decided against his claims. These decisions must preclude any further hearing in this Court on the same grounds; and there is no new matter offered on which it can exercise jurisdiction.
It is therefore ordered and decreed, that the injunction granted in this case he dissolved, and that the bill be dismissed, (a)
There was an appeal from the above decree, but it was unanimously affirmed by all the Chancellors, who would not hear the defendant’s counsel.
Present, Chancellors De Saussure, W'aties, James, Gailrard and Thompson.
W. F. De Saussure, for the complainant. Blanding, and Nott £f M’ Cord, for the defendant.

 16 Vin. Abr. 578. Tit. Prerogative, E. a. 4. 17 Vin. 88, Tit. Prerog. M. b. 18-9. 6 Mod. 307.